J-S46034-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| EDWARD DURHAM BRADY, | : | |
| | : | |
| Appellant | : | No. 474 EDA 2015 |

Appeal from the PCRA Order entered on January 23, 2015
in the Court of Common Pleas of Chester County,
Criminal Division, No. CP-15-CR-0004148-2012

BEFORE: MUNDY, OLSON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED AUGUST 31, 2015**

Edward Durham Brady ("Brady") appeals from the dismissal of his first Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"). ***See*** 42 Pa.C.S.A. §§ 9541-9546. We affirm.

In July 2004, Brady met thirteen-year old K.L.S. at a birthday party. Brady, who was thirty-five years old, drove K.L.S. around the neighborhood where the birthday party was held. K.L.S. stated that she performed oral sex on Brady while he was driving. Thereafter, K.L.S. accepted a job cleaning Brady's mobile home for $50.00 per visit. Throughout 2004 and 2005, K.L.S. performed numerous sexual acts on Brady. Brady provided marijuana and alcohol to K.L.S. The sexual encounters between Brady and K.L.S. ended prior to her fifteenth birthday.

In 2007, K.L.S.'s mother began living with Brady in his mobile home. In 2012, K.L.S. informed police that Brady sexually assaulted her throughout 2004 and 2005 when she was thirteen and fourteen years old. On June 19, 2012, police intercepted an in-person conversation[1] between Brady and K.L.S., wherein K.L.S. accused Brady of stealing her mother because of the sexual encounters. On June 24, 2012, police intercepted a second in-person conversation between Brady and K.L.S., where they discussed the sexual encounters in question.

Brady was arrested and charged with numerous crimes. On September 17, 2013, Brady entered a negotiated guilty plea to two counts of involuntary deviate sexual intercourse ("IDSI"), and one count of statutory sexual assault.[2] On September 17, 2013, in accordance with the plea agreement, the trial court imposed concurrent sentences of three and one-half to seven years in prison on the IDSI convictions, and a consecutive sentence of ten years' probation on the statutory sexual assault conviction. Following a hearing, Brady was determined to be a sexually violent predator ("SVP"). Brady did not file a direct appeal.

Brady filed a timely PCRA Petition on August 1, 2014. Following an evidentiary hearing, the PCRA court denied the Petition. Brady filed a timely Notice of Appeal, and a court-ordered Pennsylvania Rule of Appellate

---

[1] The Commonwealth obtained permission from the Honorable Ann Marie Wheatcraft to intercept in-person conversations between K.L.S. and Brady.

[2] 18 Pa.C.S.A. §§ 3123(a)(7), 3122.1

Procedure 1925(b) Concise Statement. Thereafter, the PCRA court issued an Opinion.

On appeal, Brady raises the following questions for our review:

I. Were [Brady's] Sixth and Fourteenth Amendment rights under the U.S. Constitution and [Brady's] rights under Article 1 [section] 9 of the Pennsylvania Constitution violated when counsel ineffectively advised [Brady] to enter a guilty plea?

II. Was counsel for [Brady] constitutionally ineffective under the Sixth Amendment of the U.S. Constitution and Article 1 [section] 9 of the Pennsylvania Constitution, denying [Brady] due process of law under the Fourteenth Amendment, for advising [Brady] to immediately plead guilty based upon Michelle Hunt's ["Hunt"] statement without requesting [a] continuance to investigate newly discovered evidence?

III. Was counsel for [Brady] constitutionally ineffective under the Sixth Amendment of the U.S. Constitution and Article 1 [section] 9 of the Pennsylvania Constitution for [waiving] [Brady's] right to be present during the [SVP hearing]?

Brief for Appellant 4.[3]

This Court's standard of review regarding a PCRA court's order is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record.

***Commonwealth v. Carter***, 21 A.3d 680, 682 (Pa. 2011) (citations and quotation marks omitted).

---

[3] Because Brady's first two arguments challenge the voluntariness of his guilty plea, we will address them together.

In each of Brady's arguments, he claims ineffective assistance of counsel. To succeed on an ineffectiveness claim, Brady must demonstrate by a preponderance of evidence that

> (1) [the] underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different.

**Commonwealth v. Ali**, 10 A.3d 282, 291 (Pa. 2010). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. **Commonwealth v. Martin**, 5 A.3d 177, 183 (Pa. 2010). Counsel is presumed to be effective and the burden is on the appellant to prove otherwise. **Commonwealth v. Hannible,** 30 A.3d 426, 439 (Pa. 2011).

In his first claim, Brady argues that his plea counsel, Christian J. Hoey, Esquire ("Attorney Hoey"), was ineffective and caused Brady to involuntarily enter a guilty plea. Brief for Appellant at 13-14, 22-23. Brady contends that Attorney Hoey was aware of evidence and witnesses who would establish that the sexual encounters in question occurred in 2008, when K.L.S. was eighteen years old. **Id**. at 14-15. Specifically, Brady claims that Martha McClenaghan ("McClenaghan") was his cleaning lady from 2000-2006, and that her testimony and Brady's bank records would discredit K.L.S.'s allegations. **Id**. at 15-19. Brady also asserts that Attorney Hoey was aware that K.L.S. often brought friends when she cleaned Brady's

apartment, and that these friends would testify that K.L.S. regularly cleaned Brady's mobile home in 2008. *Id*. at 20-21.

In his second claim, Brady argues that Attorney Hoey was ineffective when he failed to interview or investigate Brady's ex-girlfriend, Hunt. *Id*. at 23-24, 26. Brady asserts that Attorney Hoey urged him to plead guilty upon receiving a police statement from Hunt. *Id*. at 23, 26-27. Brady also claims that Attorney Hoey's failure to request a continuance, in order to conduct an investigation of Hunt's statement, caused prejudice. *Id*. at 26-27, 29, 31. Brady contends that he would not have pled guilty if Attorney Hoey had interviewed Hunt, and if Attorney Hoey had not urged him to plead guilty. *Id*. at 27, 29-31.

"A criminal defendant has the right to effective counsel during a plea process as well as during trial." *Commonwealth v. Hickman*, 799 A.2d 136, 141 (Pa. Super. 2002). "The law does not require that appellant be pleased with the outcome of his decision to enter a plea of guilty[.]" *Commonwealth v. Diaz*, 913 A.2d 871, 873 (Pa. Super. 2006) (citation omitted). Instead, the defendant must show that counsel's deficient stewardship resulted in the entry of an unknowing, involuntary or unintelligent plea. *Commonwealth v. Bedell*, 954 A.2d 1209, 1212 (Pa. Super. 2008). "This is similar to the manifest injustice standard applicable to all post-sentence attempts to withdraw a guilty plea." *Commonwealth*

*v. Lewis*, 708 A.2d 497, 500 (Pa. Super. 1998) (internal quotations omitted).

In order to ensure a voluntary, knowing, and intelligent plea, trial courts are required to ask the following questions in the guilty plea colloquy:

> 1. Does the defendant understand the nature of the charges to which he or she is pleading guilty or *nolo contendere*?
>
> 2. Is there a factual basis for the plea?
>
> 3. Does the defendant understand that he or she has the right to a trial by jury?
>
> 4. Does the defendant understand that he or she is presumed not guilty until found guilty?
>
> 5. Is the defendant aware of the permissible ranges of sentences and/or fines for the offenses charged?
>
> 6. Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

*Bedell*, 954 A.2d at 1212; *see also* Pa.R.Crim.P. 590, cmt. "The guilty plea colloquy must affirmatively demonstrate that the defendant understood what the plea connoted and its consequences." *Lewis*, 708 A.2d at 501. "Once a defendant has entered a plea of guilty, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him." *Commonwealth v. Stork*, 737 A.2d 789, 790 (Pa. Super. 1999) (citation and internal brackets omitted). "In determining whether a guilty plea was entered knowingly and voluntarily, ... a court is free to consider the totality of the circumstances surrounding the plea." *Commonwealth v. Flanagan*,

854 A.2d 489, 513 (Pa. 2004) (citation and internal quotation marks omitted). Furthermore, the oral colloquy may be supplemented by a written colloquy that is read, completed, and signed by the defendant and made a part of the plea proceedings. ***Commonwealth v. Morrison***, 878 A.2d 102, 108 (Pa. Super. 2005).

Here, Brady stated that he had a full and complete opportunity to discuss the decision to enter a guilty plea with Attorney Hoey, and that he understood the charges against him. Guilty Plea Colloquy, 9/17/13, at 5-9; N.T., 9/17/13, at 8-11.[4] Brady also stated that he understood the factual basis of the underlying charges. Guilty Plea Colloquy, 9/17/13, at 1-2, 5; N.T., 9/17/13, at 3-7. Brady stated that he was waiving his right to a jury trial, and that he waived any possible defenses to the charges. Guilty Plea Colloquy, 9/17/13, at 6-7; N.T., 9/17/13, at 9. Moreover, Brady stated that he understood he was presumed not guilty in this matter. Guilty Plea Colloquy, 9/17/13, at 6, 7; N.T., 9/17/13, at 10. Brady admitted that he was aware of the permissible range of sentences available. Guilty Plea Colloquy, 9/17/13, at 8. Brady further understood that the trial court did not have to accept the terms of the plea agreement. ***Id***. Brady additionally stated that he was not forced or threatened to plead guilty, and that he was

---

[4] In its Opinion, the PCRA court stated that the hearing date reflected on the cover page of the transcript, September 31, 2013, is incorrect. The actual date of the guilty plea hearing was September 17, 2013. ***See*** PCRA Court Opinion, 4/14/15, at 2 n.1.

satisfied with Attorney Hoey's representation.    N.T., 9/17/13, at 7, 10; Guilty Plea Colloquy, 9/17/13, at 9.

Based on the totality of the circumstances, we conclude that Brady knowingly and voluntarily entered his guilty plea. *See Commonwealth v. Munson*, 615 A.2d 343, 349 (Pa. Super. 1992) (stating that appellant's guilty plea was entered voluntarily where a full and complete guilty plea colloquy was conducted); *see also Commonwealth v. Muhammad*, 794 A.2d 378, 384 (Pa. Super. 2002) (stating that appellant cannot claim that he involuntarily entered a guilty plea where he stated that no one threatened him to plead guilty).    Brady does not contest that he read and fully understood the implications of his guilty plea, including waiving all defenses. *See Commonwealth v. McCauley*, 797 A.2d 920, 922 (Pa. Super. 2001) (stating that "[a] defendant is bound by the statements he makes during his plea colloquy"); *see also Muhammad*, 794 A.2d at 384 (stating that appellant voluntarily entered a guilty plea where he read the guilty plea colloquy and understood the basic tenets of the guilty plea).    Thus, because Brady voluntarily entered his guilty plea, his ineffectiveness claims regarding the potential defenses are without arguable merit.   *See McCauley*, 797 A.2d at 922.

In his third claim, Brady argues that Attorney Hoey was ineffective for waiving Brady's right to be present at his SVP hearing.   Brief for Appellant at 31-32.    Brady contends that he had the right to choose whether to

participate in the SVP hearing. *Id*. at 33. Brady claims that Attorney Hoey never consulted with him about the date of the SVP hearing, and that Brady did not voluntarily waive his right to be present at the SVP hearing. *Id*. at 32. Brady asserts that any strategic reason provided by Attorney Hoey for participating in the SVP hearing, without Brady's presence, is meritless. *Id*. at 33-34. Brady alleges that his presence at the SVP hearing would have allowed Attorney Hoey to present evidence that refuted any indication of a mental disorder. *Id*. at 34.

We conclude that Brady's ineffectiveness claim regarding the SVP hearing is not cognizable under the PCRA. *See Commonwealth v. Masker*, 34 A.3d 841, 844 (Pa. Super. 2011) (*en banc*) (stating that a claim that challenges the effectiveness of counsel with respect to the method by which defendant was determined to be an SVP is not cognizable under the PCRA); *see also id*. (stating that "a challenge to the classification of defendant as a SVP is not a challenge to the conviction or sentence, and therefore is not cognizable under the PCRA"). Thus, Brady is not entitled to

relief.[5]

In his final claim, Brady argues that the cumulative errors entitle him to relief.[6] However, "[i]t is well settled that no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually." *Commonwealth v. Reid*, 99 A.3d 470, 520 (Pa. 2014). Thus, Brady is not entitled to cumulative relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2015

---

[5] We note that at the PCRA hearing, Attorney Hoey testified that he met with Brady prior to his SVP hearing. N.T., 1/23/15, at 63-64. At their meeting, Brady told Attorney Hoey that he intended to maintain his innocence regarding his convictions once he got in front of the SVP evaluator. *Id*. at 63, 121. Attorney Hoey testified that the SVP evaluator would likely interpret Brady's strategy as taking a lack of responsibility for his actions since he already entered a guilty plea, and as an indicator that Brady will not be a good candidate for rehabilitation. *Id*. at 63. Further, Attorney Hoey testified that Brady's convictions automatically triggered a lifetime Megan's Law reporting requirement, and that the outcome of the SVP hearing would not impact his sentence. *Id*. at 62. Attorney Hoey testified that the constructive effect of his conversation with Brady led him to believe that Brady did not want to meet with the SVP evaluators. *Id*. at 64, 129. The PCRA court found Attorney Hoey's strategy credible. PCRA Court Opinion, 4/14/15, at 8.

[6] This claim was not included in Brady's Statement of Questions Presented. *See* Pa.R.A.P. 2116(a).